IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:22-cv-00430-M

JOHN DOE 1,

    Plaintiff,

v.

VARSITY BRANDS, LLC, et al.,

    Defendants.

ORDER

This matter comes before the court on the motions to dismiss filed by Defendants Chase Burris ("Coach Burris") and Shawn Wilson ("Coach Wilson") [DE 57] and U.S. All Star Federation, Inc. ("USASF") (together, "Defendants") [DE 82]. Defendants primarily argue that Plaintiff John Doe 1 ("Mr. Doe") fails to state plausible claims to relief under the Child Abuse Victims' Rights Act ("CAVRA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The former arguably does not accommodate a liability theory based on the aiding and abetting of enumerated offenses, and the latter arguably does not allow Mr. Doe to stand on his alleged lost membership dues and fees and lost competitive ability to maintain suit. The Defendants also argue that Mr. Doe's numerous state law claims are deficient and should be dismissed. For the following reasons, the court grants in part and denies in part the pending motions.

## I. Background

### A. Factual Background

Mr. Doe is a former youth cheerleader who alleges that he was sexually abused by several unnamed coaches and a choreographer while training at Defendant Cheer Extreme Raleigh, LLC

("Cheer Extreme"), a cheerleading gym affiliated with the Varsity Defendants. In addition to pursuing claims against Cheer Extreme, its owners, and two of its coaches, Plaintiff seeks to hold Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, (collectively, "Varsity" or "Varsity Defendants"); Jeff Webb ("Webb"); Bain Capital, LP ("Bain"); Charlesbank Capital Partners, LP ("Charlesbank"); and competitive cheerleading's governing bodies—USA Federation for Sport Cheering ("USA Cheer") and U.S. All Star Federation ("USASF")—liable for misrepresenting the safety of Varsity-affiliated gyms and competitions and failing to adopt and enforce adequate athlete-safety policies and procedures. Mr. Doe makes the following relevant factual allegations—as distinct from legal conclusions or unsupported inferences—which the court accepts as true at this stage of the proceedings. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

### i. *Overview of All-Star Cheerleading*

Unlike scholastic or sideline cheerleading, private or "All-Star" cheerleading is a competition-based sport. DE 1 ¶¶ 28–29. Over four million athletes across the United States participate in All-Star cheerleading, which as an industry generates billions of dollars in annual revenue. *Id.* ¶¶ 36–37. This industry's valuation primarily stems from the costs incurred by the millions of athletes training and competing in All-Star cheerleading. *Id.* ¶ 37. A single season costs anywhere from $3,000 to $7,000 per athlete, while some families spend more than $20,000 a year for transportation, lodging, membership fees, merchandise, and uniforms. *Id.* ¶ 31.

The beginnings of the competitive cheerleading industry can be traced to Webb's founding of the predecessor to Varsity Spirit in 1974. *Id.* ¶ 42. Varsity began as a provider of educational training camps for cheerleaders and has since expanded into selling uniforms and apparel and organizing cheer competitions. *Id.* ¶¶ 42–44. It now controls an estimated 90% of the All-Star

cheerleading industry. *Id.* ¶ 46. From 2014 to 2018, Varsity was wholly owned by Charlesbank. *Id.* ¶¶ 25, 109. In 2018, Bain purchased Varsity for $2.8 billion. *Id.* ¶¶ 26, 111.

Two governing bodies oversee competitive cheerleading in the United States: USASF and USA Cheer. *Id.* ¶¶ 24, 82, 88, 90. Varsity was heavily involved in creating and operating both organizations. For example, Varsity allegedly advanced a $1.8 million interest-free loan to help launch USASF, submitted USASF's trademark application, and for at least fifteen years, housed USASF's offices at its corporate address and paid USASF's employees directly. *Id.* ¶¶ 81, 92–93. Varsity also continues to control a majority of the seats on USASF's board of directors, including all seats with voting rights. *Id.* ¶ 95. USA Cheer was similarly funded by and is operationally bound up with Varsity. *Id.* ¶¶ 89, 98–100.

As a result of their ties to competitive cheerleading's governing bodies, Webb and Varsity "were entirely self-regulated" and could control "all aspects of All-Star cheer." *Id.* ¶¶ 79, 103. This control meant that All-Star athletes were "mandated" to buy a USASF membership to compete at Varsity events, *id.* ¶ 49; they were required to pay annual or monthly dues to Varsity and their local Varsity-affiliated gym for "competition attendance, uniforms, accessories, and other related fees," *id.* ¶ 54; gyms and coaches also had to pay "monthly or annual fees" to USASF, USA Cheer, and the Varsity Defendants, *id.* ¶ 55; affiliate gyms are required to sign "multi-year [Varsity] supply" and competition contracts, *id.* ¶ 52; competing athletes at Varsity-affiliated gyms had to compete in a "specified number" of annual Varsity events, *id.* ¶ 59; and athletes and their families were required to purchase rooms at "Varsity-chosen" hotels when attending Varsity competitions, *id.* ¶ 62.

### ii. *Cheer Extreme Raleigh*

For over two decades, Cheer Extreme has been a private cheer, dance, and tumbling gym offering its services to children as well as adults in North Carolina and along the eastern seaboard.

3

*Id.* ¶ 170. It was initially owned by a "prominent cheer family" who later sold the gym to Defendants Kelly and Randall Helton ("the Heltons"). *Id.* ¶ 171. Coaches Burris and Wilson were "protégés" of Kelly Helton, helping her coach Cheer Extreme's athletes. *Id.* ¶¶ 15–16.

Over the years, Cheer Extreme has won "hundreds of National Championships, including 13 NCA titles, 4 MAJORS titles, 11 Summit titles, and a [sic] 5 World Champion titles." *Id.* ¶ 172. USASF certified Cheer Extreme "as meeting All-Star standards with respect to coach credentials, program quality, and athlete safety." *Id.* ¶ 175. According to Mr. Doe, USASF's certification meant that USASF "warrant[ed] that the gym, its coaches, and its choreographers were safe, and followed best practices . . . to prevent athlete abuse." *Id.* ¶¶ 51, 176. Cheer Extreme's athletes had to purchase USASF memberships. *Id.* ¶ 177.

### iii. *Mr. Doe's Alleged Abuse*

Mr. Doe started cheerleading in 2013 when he was twelve years old. ¶ 197. He joined one of Cheer Extreme's competition teams in 2015. *Id.* ¶¶ 197–200. As a competitive cheerleader, Mr. Doe traveled to and participated in Varsity events and activities, and he paid annual dues and other fees required by Cheer Extreme and Varsity. *See id.* ¶¶ 207, 211–213, 226.

Within his first year at Cheer Extreme, an unnamed male coach "initiated a sexual relationship" with Mr. Doe. *Id.* ¶ 200. Coaches Burris and Wilson "knew about the sexual relationship" between Mr. Doe and this other coach, who would hug and touch Mr. Doe in front of them and other adults at Cheer Extreme. *Id.* ¶¶ 202–203. At around the same time, an unnamed coach from another gym, Cheer Extreme Kernersville, began sending Mr. Doe nude photos. *Id.* ¶ 205. Mr. Doe reported this coach's conduct to Coach Burris. *Id.* ¶ 206. Coach Burris instructed Mr. Doe to inform him if the coach sends nudes again but "did nothing further." *Id.*

Around the same time, Mr. Doe connected with another unnamed Kernersville coach on social media. *Id.* ¶ 209. Several months later, they attended the same competition, where the coach

4

came to Mr. Doe's hotel room and insisted that Mr. Doe ride in his car. *Id.* ¶ 213. The coach "proceeded to drive around, eventually stopping" the car and forcing Mr. Doe to perform a sex act. *Id.* ¶ 213. When he was seventeen years old, a Varsity- and USASF-approved choreographer solicited Mr. Doe for sex, which Mr. Doe successfully refused. *Id.* ¶¶ 217–19. "As a result of these instances, as well as other issues at the gym," Mr. Doe decided to leave Cheer Extreme for another gym. *Id.* ¶ 224. In 2022, Mr. Doe renewed his USASF membership. *Id.* ¶ 226.

### B. Procedural Background

Mr. Doe filed suit on October 26, 2022. Against USASF and Coaches Burris and Wilson, Mr. Doe brings claims under the Child Abuse Victims' Rights Act of 1986 ("CAVRA"), 18 U.S.C. § 2255 and the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d). He also alleges claims for gross negligence and civil conspiracy against these Defendants. He brings additional claims against USASF for unfair and deceptive trade practices, negligent supervision, breach of contract, and fraud. *See* DE 1 ¶¶ 228–344.

On March 24, 2023, Coaches Burris and Wilson moved to dismiss the claims against them. *See* DE 57. On April 14, 2023, USASF similarly moved. *See* DE 82. Mr. Doe timely responded to both motions. *See* DE 99; DE 104. Defendants timely replied. *See* DE 111; DE 113. The motions are ripe for disposition.[1]

## II. Legal Standard

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement need not be perfect but must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] While the instant motions were pending, Mr. Doe reportedly settled his claims against the Varsity Defendants, USA Cheer, Charlesbank, Bain, and Webb. DE 129.

A 12(b)(6) motion tests the sufficiency of this statement. First, the court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in the nonmovant's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, "bare" factual assertions and "legal conclusions" proffered by the plaintiff need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). Second, the nonmovant's remaining allegations must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Facial plausibility requires enough fact "to raise a right to relief above the speculative level." *Id.* at 555–56 ("[The standard] simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."). A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). This determination draws on "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. Discussion

### A. CAVRA

CAVRA provides a private right of action to child sex abuse victims under 18 U.S.C. § 2255. As previously observed, "Congress enacted 18 U.S.C. § 2255 to address the 'multi-million dollar' child exploitation industry and the 'lack [of] effective remedies' available to 'exploitation victims' 'under Federal law.'" *Doe 9 v. Varsity Brands, LLC*, 2023 WL 4191782, at *5 (D.S.C. June 26, 2023) (quoting Pub. L. No. 99-500, § 702, 100 Stat. 1783, 1783–74 (1986)). Congress recognized the "physiological, psychological, and emotional harm caused by the production, distribution, and display of child pornography." § 702, 100 Stat. at 1783–74. Congress also recognized the need to "prevent the sexual abuse of minors and amateur athletes" and later amended § 2255 by broadening the range of enumerated offenses giving rise to an actionable claim. *See* Pub. L. No. 115-126, § 102, 132 Stat. 318, 319.

6

Section 2255, as amended, reads in relevant part:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action . . . .

18 U.S.C. § 2255. Civil liability under the statute does not require a prior conviction of an enumerated offense; however, a claimant must "show that the defendant committed one of the enumerated offenses." *Doe 9 v. Varsity Brands*, 2023 WL 4191782, at *5.

Defendants argue that Mr. Doe's § 2255 claim fails as a matter of law because he does not plausibly allege that USASF or Coaches Burris or Wilson committed any enumerated offense against him. DE 58 at 19; DE 83 at 8. Mr. Doe responds that the statutory text "does not limit liability to the first party perpetrator," that liability, under his theory, attaches by way of the Defendants' "aiding and abetting those crimes listed in § 2255." DE 104 at 5–6. The parties' disagreement therefore turns on whether the statute accommodates aiding and abetting liability.

The district court in *Doe 9 v. Varsity Brands* considered factually similar allegations and found it does not.[2] The *Doe 9* court found that § 2255 "makes no mention of secondary liability, which 'by itself is an indication that Congress did not intend to permit such a theory.'" 2023 WL 4191782, at *7 (quoting *Doe v. City of Gauley Bridge*, 2022 WL 3587827, at *13 (S.D. W. Va.

---

[2] *Doe 9* is one of several companion cases based on similar allegations and liability theories. *See, e.g.*, No. 6:22-cv-03509, 2023 WL 4191782, at *1 n.2 ("This case is one of four cases before the court involving similar allegations of sexual assault and essentially the same defendants. 6:22-cv-02957-HMH, 6:22-cv-03508-HMH, 6:22-cv-03510-HMH."); *E.M. v. Varsity Brands, LLC*, No. 2:22-cv-09410 (C.D. Cal. filed Dec. 29, 2022); *Doe 1 v. Varsity Brands, LLC*, No. 1:22-cv-04489 (N.D. Ga. filed Nov. 10, 2022); *Doe 1 v. Varsity Brands, LLC*, No. 1:22-cv-02139 (N.D. Ohio filed Nov. 28, 2022); *Doe v. Varsity Brands, LLC*, No. 2:22-cv-02657 (W.D. Tenn. filed Sept. 26, 2022).

7

Aug. 22, 2022)); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc) (holding that "statutory silence on the subject of secondary liability means there is none"). As the Supreme Court observed in a different statutory context, "[i]f . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *See Central Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994). This court agrees with *Central Bank*'s observation and ultimately the *Doe 9* court's § 2255 interpretation.

Moreover, Mr. Doe fails to plausibly allege that the Defendants personally committed a qualifying predicate offense to sustain his § 2255 claim. Mr. Doe claims that he "was a minor at the time he was sexually abused and assaulted, sexually exploited, transported across state lines for illegal sexual activity, and/or used in creating or receiving illegal and obscene digital materials." DE 1 ¶ 234. Such abusive activity would constitute at least one predicate offense. But Mr. Doe does not charge Defendants with such activity. Rather, he alleges Coaches Burris and Wilson knew about certain instances of abuse and failed to report those instances to USASF. *Id.* ¶¶ 203–04, 206. He also alleges USASF did not receive any reports regarding the abuse he endured. *See id.* ¶¶ 142–68. Even if the court draws all reasonable inferences from these allegations, Mr. Doe fails to allege first-party abusive conduct giving rise to a § 2255 violation. Mr. Doe's CAVRA claim against the Defendants is therefore dismissed.

### B. RICO

RICO provides a private right of action for persons who have been "injured in his business or property by reason of violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). A violation occurs when "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, . . . conduct[s] or participate[s], directly or indirectly,

in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Another violation occurs when "any person . . . conspire[s] to violate" § 1962(c).

Mr. Doe alleges that Defendants engaged in a "civil conspiracy" to violate § 1962(c), in violation of § 1962(d). *See id.* ¶¶ 237–259. He also appears to allege that Defendants violated § 1962(c) by forming an association-in-fact enterprise to defraud Mr. Doe with false representations of athlete safety while in reality recklessly subjecting him to sexual exploitation. *See id.* In describing the injuries he sustained as a result of Defendants' alleged RICO violations, Mr. Doe claims he "had a property interest in his membership dues paid . . . and other fees and costs, and [a property interest] in the continued ability to cheer competitively," but "[t]he actions of the Enterprise and its conspirators were the direct and proximate cause of these injuries." *See* DE 1 ¶¶ 256–257; *see also* DE 99 at 11; DE 104 at 8.

To the extent Mr. Doe's RICO claims are based on his lost dues and fees and his lost competitive ability, Defendants argue he lacks standing to maintain his claims. To be sure, standing under RICO requires some injury to the claimant's "business or property" which was proximately caused by a defendant's alleged racketeering activity. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1187, 1189–90 (4th Cir. 1988); 18 U.S.C. § 1964(c). But Mr. Doe, they argue, fails to plausibly allege that the alleged misrepresentations regarding athlete safety proximately caused his lost membership dues and fees. DE 58 at 34–35; DE 83 at 12. Coaches Burris and Wilson also argue his lost ability to compete is not a cognizable injury under § 1964(c). DE 58 at 35.

### iv. Membership Dues and Fees

"When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). The focus is not "on whether the harm to the RICO plaintiff was a foreseeable result of the defendant's conduct or even whether it was 'the intended

9

consequence of that behavior,' but rather on 'the directness of the relationship between the conduct and the harm.'" *Doe 9 v. Varsity Brands*, 2023 WL 4191782, at *9 (cleaned up) (quoting *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018)). The proximate "cause determination is properly one of law for the court." *Brandenburg*, 859 F.2d at 1187.

In *Gilbert v. U.S. Olympic Committee*, the court held that racketeering activity, similar to the activity alleged in this case, generally does not proximately cause an athlete to pay membership dues when those dues are necessary to compete in the athlete's sport. *See* 2019 WL 1058194, at *25 (D. Colo. Mar. 6, 2019) (unpublished), *report and recommendation adopted in relevant part by* 423 F. Supp. 3d 1112 (D. Colo. 2019). *Gilbert* concerned a group of female taekwondo athletes who allegedly suffered sexual abuse while competing in the USA Taekwondo ("USAT") system. *See id.* at *1. The athletes alleged that USAT, its former head coach, and other defendants engaged in an enterprise to obstruct investigations into alleged sexual abuse within the USAT system by misrepresenting the nature of the sexual abuse the athletes had endured. *See id.* at *23. The court observed that the athletes failed to "allege that they paid a $50 membership fee because Defendants entered into an enterprise to obstruct any investigation . . . . Instead, they [allegedly] paid the fee in order to participate in USAT-sanctioned events." *Id.* at *25.

Likewise, Mr. Doe alleges that "the minimum a single athlete pays annually to compete on behalf of Defendant Cheer Extreme exceeds $4,000." DE 1 ¶ 33. He alleges he is one such athlete who "paid his dues annually as well as other fees require by Defendant Cheer Extreme and the Varsity Defendants." DE 1 ¶ 226. He does not allege that he paid his dues and fees based on representations of safety against sexual exploitation. *See id.* In fact, he alleges that he continued to pay his annual dues and fees, despite the recurring sexual abuse he experienced. *Id.* ¶ 226. Thus, Mr. Doe "seemingly paid membership dues and competition fees out of necessity to participate in

10

Case 5:22-cv-00430-M-RN    Document 140    Filed 03/20/24    Page 10 of 13

events sanctioned by USASF and Varsity." *Doe 9 v. Varsity Brands*, 2023 WL 4191782, at *9. At the very least, the alleged misrepresentations of safety within All-Star cheerleading "only indirectly" caused him to pay his dues and fees. *Anza*, 547 U.S. at 460 ("There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."). Mr. Doe's lost membership dues and other fees are insufficient to provide him standing under RICO.

### v. *Continued Ability to Compete*

Coaches Burris and Wilson argue Mr. Doe's lost ability to continue competing in competitive cheerleading cannot provide Mr. Doe standing to maintain his RICO claims. DE 58 at 35. Mr. Doe does in fact rely on his alleged lost "property interest" in the "continued ability to cheer competitively" to provide him standing. *See* DE 1 ¶ 256; DE 104 at 8. However, he does not respond to Coaches Burris and Wilson's argument that the purported injury is insufficient for standing purposes. *See* DE 99 at 11–12; DE 104 at 8–9.

"Allegations of personal injuries and the pecuniary losses incurred therefrom do not qualify as injury to 'business or property.'" *Bowen v. Adidas Am., Inc.*, 541 F. Supp. 3d 670, 676 (D.S.C. 2021) (quoting *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995)). Moreover, an "injury to mere expectancy interests or to an intangible property interest" cannot provide standing under RICO. *Id.* (citation omitted) (discussing "expectations of future athletic careers").

Mr. Doe's lost ability to compete appears to be a complex of "personal injuries—loss of earnings, loss of consortium, loss of guidance, mental anguish, and pain and suffering, to name a few." *See Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992). Lost competitive ability and the resulting "pecuniary losses . . . are not sufficient to meet the statutory requirement of injury to 'business or property.'" *See Bast*, 59 F.3d at 495 (quoting *Doe v. Roe*, 958 F.2d at 767–70).

11

Moreover, his lost competitive ability is too speculative to the extent he claims an expectation loss. As the *Doe 9* court held, "any injuries that [the athletes] might suffer from having their competitive cheerleading careers cut short are too speculative to constitute injury to business or property within the meaning of § 1964(c)." 2023 WL 4191782, at *9. His lost ability to compete, therefore, cannot provide standing under RICO. Without a cognizable injury resulting from Defendants' alleged racketeering activity, Mr. Doe's RICO claims must be dismissed.

### C. Remaining State Law Claims

As stated above, Mr. Doe brings claims for gross negligence and civil conspiracy against USASF and Coaches Burris and Wilson. He brings additional claims against USASF for unfair and deceptive trade practices, negligent supervision, breach of contract, and fraud. Since his CAVRA and RICO claims fail, the court no longer has a compelling reason to retain supplemental jurisdiction over Mr. Doe's remaining state law claims against Defendants.

On its own motion, a district court may raise issues regarding subject matter jurisdiction. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). The court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). To be sure, the court "maintains wide discretion to dismiss the supplemental state law claims," even when "it properly has supplemental jurisdiction." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 n.4 (4th Cir. 2006) (internal quotation marks omitted). In exercising this discretion, a district court must consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). If the court declines to exercise supplemental jurisdiction, the "period of limitations" for the remaining claims "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

Mr. Doe's remaining claims against Defendants do not present any important or overriding issues of federal policy. They predominately require the interpretation and application of state law. Thus, "dismissal is appropriate because district courts should avoid '[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties." *Judson v. Bd. of Supervisors of Mathews Cnty.*, 436 F. Supp. 3d 852, 869 (E.D. Va. 2020), *aff'd*, 828 F. App'x 180 (4th Cir. 2020) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Moreover, declining jurisdiction over the remaining claims would not significantly inconvenience or unfairly prejudice the parties. In fact, this case as a whole has not yet progressed past the pleading stage. No discovery has commenced, and no trial date has been set. The court thus declines supplemental jurisdiction over the remaining state law claims against USAFS and Coaches Burris and Wilson. *See, e.g.*, *Doe v. Varsity Brands, LLC*, 2023 WL 4931929, at *13 (N.D. Ohio Aug. 2, 2023) (declining supplemental jurisdiction); *Doe v. Varsity Brands, LLC*, 2023 WL 4935933, at *25 (N.D. Ohio Aug. 2, 2023) (same).

## IV. Conclusion

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the motions to dismiss filed by Defendants Burris and Wilson [DE 57] and USASF [DE 82]. The court DISMISSES WITHOUT PREJUDICE the remaining state law claims against these Defendants so that Mr. Doe can pursue them in state court if he wishes to do so.

SO ORDERED this 20th day of March, 2024.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

13

Case 5:22-cv-00430-M-RN   Document 140   Filed 03/20/24   Page 13 of 13